**IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| Zulay, LLC | |
| Plaintiff, | |
| v. | No. 22-cv-3265 |
| THE PARTNERSHIPS AND UNINCORPORATED ASSOCIATIONS IDENTIFIED IN SCHEDULE "A", | Honorable John J. Tharp, Jr. |
| Defendants. | |

**DEFENDANT KITTESENSU'S ANSWER,
AFFIRMATIVE DEFENSES, AND
COUNTERCLAIMS**

KITESSENSU, by and through counsel, responds to Plaintiff's Complaint as follows:

## I.     JURISDICTION AND VENUE

1.     This Court has original subject matter jurisdiction over the claims in this action pursuant to the provisions of the Lanham Act, 15 U.S.C. § 1051, et seq., 28 U.S.C. § 1338(a)-(b) and 28 U.S.C. § 1331. This Court has jurisdiction over the claims in this action that arise under the laws of the State of Illinois pursuant to 28 U.S.C. § 1367(a) because the state law claims are so related to the federal claims that they form part of the same case or controversy and derive from a common nucleus of operative facts.

ANSWER: Defendant admits that this Court has original subject matter jurisdiction over the claims raised in Plaintiff's Complaint.

2.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391, and this Court may properly exercise personal jurisdiction over Defendants, since each Defendant directly targets business activities toward consumers in the United States, including Illinois, through their operation of or assistance in the operation of the fully interactive, commercial internet stores

1

operating under the Defendant domain names and/or the Defendant Internet Stores identified in Schedule A. Specifically, each of the Defendants directly reaches out to do business with Illinois residents by operating or assisting in the operation of one or more commercial, interactive e-commerce stores that sell products using counterfeit versions of Plaintiff's federally registered trademarks directly to Illinois consumers. In short, each Defendant is committing tortious acts in Illinois, is engaging in interstate commerce, and has wrongfully caused Plaintiff substantial injury in the State of Illinois.

> ANSWER: Defendant denies targeting business activities toward consumers in Illinois. Defendant denies that operating an e-commerce store on a platform such as Amazon.com creates global personal jurisdiction. Defendant denies selling counterfeit products bearing Plaintiff's trademarks. Defendant is a manufacturer and sells items using its own federally registered trademark. The remaining allegations contained in this paragraph are denied.

## II.    INTRODUCTION

3.    Plaintiff filed this action to combat online counterfeiters and infringers who trade upon Plaintiff's reputation and goodwill by selling and/or offering for sale unauthorized and unlicensed counterfeit and infringing products using counterfeit versions of Plaintiff's federally registered trademarks REDACTED (U.S. Reg. No. REDACTED) and REDACTED (U.S. Reg. No. REDACTED) and copyrighted photographs and texts (U.S. Reg. Nos. REDACTED) attached as **Exhibit 1**. The Defendants created internet stores (the "Defendant Internet Stores" or the "Stores") by the dozens and designed them to appear to be selling genuine copies of Plaintiff's REDACTED and REDACTED branded REDACTED products when really the Stores are selling counterfeit versions to unknowing customers.

> ANSWER: Denied.

4.      The Defendant Internet Stores share unique identifiers, such as similar design elements of the counterfeit product offered for sale and, on information and belief, thesesimilarities suggest that the Defendant Internet Stores share common manufacturing sources, thus establishing the Defendants' counterfeiting and infringing operations arise out of the same transaction, occurrence, or series of transactions or occurrences. Defendants have gone to great lengths to avoid liability by concealing both their identities and the full scope and interworking of their counterfeiting operation, including changing the names of their Stores multiple times, opening new Stores, helping their friends open Stores, and making subtle changes to their products. Plaintiff has been forced to file this action to combat Defendants' counterfeiting and willful infringement of Plaintiff's registered trademarks, as well as to protect unknowing consumers from purchasing counterfeit products over the internet. Plaintiff has been and continues to be irreparably damaged through consumer confusion, dilution, and tarnishment of its valuable trademark because of Defendants' actions and seek injunctive and monetary relief.

ANSWER: Denied.

### III.    THE PARTIES

### Plaintiff Zu, LLC

5.      Plaintiff is a REDACTED limited liability company and is the seller of a variety of high-quality REDACTED devices and tools. Plaintiff sells these REDACTED products through its brands REDACTED and REDACTED which allows the consumers to purchase a variety of the tools and devices for their homes and REDACTED through the company's e-commerce marketplaces.

ANSWER: Defendant does not possess sufficient information to admit or deny the allegations contained in this paragraph, and on that basis they are denied.

6.      Plaintiff. Since 2015 and 2017, Plaintiff has introduced a plethora of REDACTED and REDACTED products, respectively, through its various e-commerce marketplaces. Plaintiff's durable products have been advertised with its federally registered

3

trademarks for several years. Plaintiff continues to heavily advertise its unique products on all its e-commerce marketplaces[1], social media, advertisements, and product demonstration videos to educate consumers on both its products and trademarked name. Its websites and social media feature original content, reviews, and testimonials for REDACTED and REDACTED branded products.

ANSWER: Defendant does not possess sufficient information to admit or deny the allegations contained in this paragraph, and on that basis they are denied.

7.    Plaintiff is engaged in the business of manufacturing, distributing, and retailing these high-quality REDACTED products within the Northern District of Illinois under the Federally registered trademarks REDACTED and REDACTED. Defendants' sales of the counterfeit product in violation of Plaintiff's intellectual property rights are irreparably damaging Plaintiff.

ANSWER: Defendant denies selling counterfeit products in violation of any of Plaintiff's intellectual property rights. Defendant does not possess sufficient information to admit or deny the remaining allegations contained in this paragraph, and on that basis they are denied.

8.    Plaintiff's brand, symbolized by the REDACTED and REDACTED trademarks, is a recognized brand of REDACTED products and REDACTED. The REDACTED and REDACTED trademarks are distinctive and identify the merchandise as goods originating from the Plaintiff. The registrations for the REDACTED and REDACTED trademarks constitute prima facie evidence of its validity and of Plaintiff's exclusive right to use the REDACTED and REDACTED trademarks pursuant to 15 U.S.C. § 1057(b). The REDACTED and REDACTED trademarks have been continuously used and never abandoned since their first use.

ANSWER: Defendant does not possess sufficient information to admit or deny the

allegations contained in this paragraph, and on that basis they are denied.

9.      Plaintiff uses the REDACTED and REDACTED trademarks to identify its goods.The trademarks are distinct when they are applied to Plaintiff's goods, signaling to the purchaser and consumer that the products are from Plaintiff and are made and manufactured to Plaintiff's original specifications and standards.

ANSWER: Defendant does not possess sufficient information to admit or deny the allegations contained in this paragraph, and on that basis they are denied.

10.      Since its initial launch of the original REDACTED and REDACTED branded products, as of its first uses in commerce in 2015 and 2017, respectively, Plaintiff's trademarks have been the subjects of substantial and continuous marketing and promotion by the Plaintiff throughout the United States and, due to its strong internet presence, throughout the entire world. Plaintiff has and continues to widely promote and market its trademarked REDACTED products to customers and the general public, and on Plaintiff's website. Genuine and authentic REDACTED and REDACTED branded REDACTED products offered and sold by Plaintiff directly through reputable e-commerce marketplaces, including but not limited to Amazon.com, Target.com, Wayfair.com, its own website and others, as well as through physical retail stores, including TJ Maxx, Ross, Marshalls, and various boutique stores throughout the United States.

ANSWER: Defendant does not possess sufficient information to admit or deny the allegations contained in this paragraph, and on that basis they are denied.

11.      Plaintiff has expended substantial time, money, and other resources to develop, advertise, and otherwise promote the REDACTED and REDACTED trademarks. As a result, customers and consumers recognize that products bearing the distinctive REDACTED and REDACTED trademarks originate exclusively from the Plaintiff.

ANSWER: Defendant does not possess sufficient information to admit or deny the

allegations contained in this paragraph, and on that basis they are denied.

**The Defendants**

12.     Defendants are individuals and entities who, upon information and belief, reside in the People's Republic of China or other foreign jurisdictions. Defendants conduct business throughout the United States, including within the State of Illinois and in this Judicial District, through the operation of fully interactive commercial websites and online commercial marketplaces operating under the Defendant Internet Stores. Each Defendant targets the United States, including Illinois, and has offered to sell and, on information and belief, has sold and continues to sell counterfeit products to consumers within the United States, including Illinois and in this Judicial District.

ANSWER: Denied.

13.     Defendants are an interrelated group of counterfeiters and infringers who create numerous Defendant Internet Stores and design these stores to appear to be selling genuine REDACTED branded REDACTED products, while they actually sell inferior imitations of Plaintiff's REDACTED and REDACTED branded products. The Defendant Internet Stores share unique identifiers, such as common design elements, the same or similar counterfeit products that they offer for sale, similar counterfeit product descriptions, the same or substantially similar shopping cart platforms, accepted payment methods, check-out methods, lack of contact information, and identically or similarly priced counterfeit products and volume sale discounts. As such, the Defendant Internet Stores establish a logical relationship between them and suggest that Defendants' illegal operations arise out of the same transaction or occurrence. The tactics used by Defendants to conceal their identities and the full scope of their counterfeiting operation make it virtually impossible for Plaintiff to learn the precise scope and the exact interworking of their counterfeit network. If Defendants provide additional credible information regarding their

identities, Plaintiff will take appropriate steps to amend the Complaint.

ANSWER: Denied.

## IV.    THE DEFENDANTS' UNLAWFUL CONDUCT

14.    The success of Plaintiff's brand has resulted in significant counterfeiting and infringement. Consequently, Plaintiff has identified numerous marketplace listings on eCommerce platforms such as, but not limited to, Alibaba, Aliexpress, Amazon, DHgate, eBay, Walmart, Shopify, and Wish, which include the Defendant Aliases and which have been offering for sale, completing sales, and exporting illegal products to consumers in this Judicial District and throughout the United States. Defendants have persisted in creating the Defendant Aliases. E-commerce sales, including e-commerce internet stores like those of Defendants, have resulted in a sharp increase in the shipment of unauthorized products into the United States. *See* **Exhibit 2**, Department of Homeland Security, *Fiscal Year 2019 Seizure Statistics Report*. According to Customs and Border Patrol's ("CBP") report, over 90% of all CBP intellectual property seizures were smaller international mail and express shipments (as opposed to large shipping containers). *Id.* Approximately 85% of CBP seizures originated from mainland China and Hong Kong. *Id.* Counterfeit and pirated products account for billions of dollars in economic losses, resulting in tens of thousands of lost jobs for legitimate businesses and broader economic losses, including lost tax revenue.

ANSWER: Denied.

15.    Counterfeiting rings take advantage of the anonymity provided by the internet, which allows them to evade enforcement efforts to combat counterfeiting. For example, counterfeiters take advantage of the fact that marketplace platforms do not adequately subject new sellers to verification and confirmation of their identities, allowing counterfeiters to "routinely use false or inaccurate names and addresses when registering with these Internet platforms." *See*

**Exhibit 3**, Daniel C.K. Chow, Alibaba, Amazon, and Counterfeiting in the Age of the Internet, 41 Nw. J. Int'l. L. & Bus. 24 (2020). Additionally, "Internet commerce platforms create bureaucratic or technical hurdles in helping brand owners to locate or identify sources of counterfeits and counterfeiters." *Id.* at 25. Therefore, with the absence of regulation, Defendants may and do garner sales from Illinois residents by setting up and operating e-commerce internet stores that target United States consumers using one or more aliases, offer shipping to the United States, including Illinois, accept payment in U.S. dollars, and, on information and belief, have sold counterfeit products to residents of Illinois.

ANSWER: Denied.

16. Upon information and belief, at all times relevant hereto, the Defendants in this action have had full knowledge of Plaintiff's ownership of the REDACTED and REDACTED trademarks, including its exclusive right to use and license such intellectual property and their associated goodwill. Defendants' Internet Stores also use the same pictures to advertise their counterfeit product that Plaintiff uses on its webpage and other online marketplaces to sell and advertise its genuine and original REDACTED and REDACTED branded REDACTED products, sowing further confusion among potential purchasers.

ANSWER: Denied.

17. Defendants go to great lengths to conceal their identities by using multiple fictitious names and addresses to register and operate their massive network of Defendant Internet Stores. Other Defendant domain names often use privacy services that conceal the owners' identity and contact information. Upon information and belief, Defendants regularly create new websites and online marketplace accounts on various platforms using the identities listed in Schedule A of this Complaint, as well as other unknown fictitious names and addresses. Such Defendant Internet Store registration patterns are one of the many common tactics used by the Defendants to conceal

their identities, the full scope and interworking of their massive counterfeiting operation, and to avoid being shut down.

ANSWER: Denied.

18. The counterfeit products for sale in the Defendant Internet Stores bear similarities and indicia of being related to one another, suggesting that the counterfeit products were manufactured by and come from a common source and that, upon information and belief, Defendants are interrelated.

ANSWER: Denied.

19. Upon information and belief, Defendants also deceive unknowing customers by using the metatags of their websites and marketplace storefronts to attract various search engines on the Internet looking for websites relevant to consumer searches for Plaintiff's REDACTED and REDACTED branded REDACTED products. Additionally, upon information and belief, Defendants use other unauthorized search engine optimization tactics and social media spamming so that the Defendant Internet Stores listings show up at or near the top of relevant search results after others are shut down. As such, Plaintiff also seeks to disable Defendant domain names owned by Defendants that are the means by which the Defendants could continue to sell counterfeit products.

ANSWER: Denied.

20. Defendants' use of the trademarks on or in connection with the advertising, marketing, distribution, offering for sale, and sale of the counterfeit products is likely to cause and has caused confusion, mistake, and deception by and among consumers and is irreparably harming Plaintiff. Defendants have manufactured, imported, distributed, offered for sale, and sold counterfeit products using the REDACTED and REDACTED trademarks and continue to do so.

ANSWER: Denied.

9

21.     Defendants, without authorization or license from Plaintiff, knowingly and willfully used and continue to use the REDACTED and REDACTED trademarks in connection with the advertisement, offer for sale, and sale of the counterfeit products, through, inter alia, the internet. The counterfeit products are not genuine REDACTED and REDACTED branded products of the Plaintiff. Plaintiff did not manufacture, inspect, or package the counterfeit products and did not approve the counterfeit products for sale or distribution. Each of the Defendants' Internet Stores offers shipping to the United States, including Illinois, and, on information and belief, each Defendant has sold counterfeit products into the United States, including Illinois.

ANSWER: Denied.

22.     Upon information and belief, Defendants will continue to register or acquire listings for the purpose of selling counterfeit products that infringe upon the REDACTED and REDACTED trademarks unless preliminarily and permanently enjoined.

ANSWER: Denied.

23.     Defendants' use of the REDACTED and REDACTED trademarks in connection with the advertising, distribution, offer for sale, and sale of counterfeit products, including the sale of counterfeit products into Illinois, is likely to cause and has caused confusion, mistake, and deception by and among consumers and is irreparably harming Plaintiff.

ANSWER: Denied.

## COUNT I

## TRADEMARK INFRINGEMENT AND COUNTERFEITING (15 U.S.C. § 1114)

24.     Plaintiff hereby realleges and incorporates by reference the allegations set forth in paragraphs 1 through 23.

ANSWER: Defendant adopts and incorporates its responses to paragraphs 1-23 above as if fully set forth herein.

25.     This is a trademark infringement and counterfeit action against Defendants based on their unauthorized use in commerce of counterfeit imitations of the federally registered REDACTED and REDACTED trademarks in connection with the sale, offering for sale, distribution, and/or advertising of infringing goods. The REDACTED and REDACTED trademarks are distinctive marks. Consumers have come to expect the highest quality from Plaintiff's products provided under Plaintiff's trademarks.

ANSWER: Defendant denies all allegations of infringement against it by Plaintiff. Defendant denies selling any infringing goods. Defendant does not possess sufficient information to admit or deny the remaining allegations contained in this paragraph, and on that basis they are denied.

26.     Defendants have and continue to sell, offer to sell, market, distribute, and advertise products in connection with the Plaintiff's trademarks without Plaintiff's permission.

ANSWER: Denied.

27.     Plaintiff is the exclusive owner of Plaintiff's trademarks and copyrights. Plaintiff's United States Registrations for Plaintiff's trademarks and copyrights (**Exhibit 1**) are in full force and effect. Upon information and belief, Defendants have knowledge of Plaintiff's rights in Plaintiff's trademarks and are willfully infringing and intentionally using counterfeits of Plaintiff's trademark. Defendants' willful, intentional, and unauthorized use of Plaintiff's trademark is likely to cause confusion, mistake, and deception as to the origin and quality of the counterfeit goods among the general consuming public.

ANSWER: Defendant possesses insufficient information to admit or deny whether Plaintiff is the exclusive owner of its marks and whether their trademarks and copyrights are in "full force and effect," and on that basis this allegation is denied. The remaining allegations contained in this paragraph are denied.

11

28.     Defendants' activities constitute willful trademark infringement and counterfeiting under Section 32 of the Lanham Act, 15 U.S.C. § 1114.

ANSWER: Denied.

29.     Plaintiff has no adequate remedy at law, and if Defendants' actions are not enjoined, Plaintiff will continue to suffer irreparable harm to its reputation and the goodwill of its well-known trademarks.

ANSWER: Denied.

30.     The injuries sustained by Plaintiff have been directly and proximately caused by Defendants' wrongful reproduction, use, advertisement, promotion, offer to sell, and sale of counterfeit versions of Plaintiff's REDACTED and REDACTED branded products.

ANSWER: Denied.

## COUNT II

## FALSE DESIGNATION OF ORIGIN (15 U.S.C. § 1125)

31.     Plaintiff hereby realleges and incorporates by reference the allegations set forth in paragraphs 1 through 30.

ANSWER: Defendant adopts and incorporates its responses to paragraphs 1-30 as if set forth herein.

32.     Defendant's promoting, marketing, offering for sale, and selling of infringing and counterfeit product has created and is creating a likelihood of confusion, mistake, and deception among the general public as to the affiliation, connection, or association with Plaintiff or the origin, sponsorship, or approval of Defendants' counterfeit version of Plaintiff's unique REDACTED and REDACTED branded products.

ANSWER: Denied.

33.     By using Plaintiff's trademarks in connection with the sale of counterfeit products,

Defendants create a false designation of origin and a misleading representation of the fact as to the origin and sponsorship of the counterfeit product. By their use of Plaintiff's original photographs and texts in association with the offer and sale of the counterfeit product, Defendants seek to further confuse the relevant public as to the source or sponsorship of their goods by Plaintiff.

ANSWER: Denied.

34.     Defendants' false designation of origin and misrepresentation of fact as to the origin and/or sponsorship of the counterfeit product to the general public is a willful violation of Section 43 of the Lanham Act, 15 U.S.C. § 1125.

ANSWER: Denied.

35.     Plaintiff has no adequate remedy at law and, if Defendants' actions are not enjoined, Plaintiff will continue to suffer irreparable harm to its reputation and the goodwill of its brand.

ANSWER: Denied.

## COUNT III

### VIOLATION OF ILLINOIS UNIFORM DECEPTIVE TRADE PRACTICES ACT (815 ILCS § 510/1, *et seq.*)

36.     Plaintiff hereby realleges and incorporates by reference the allegations set forth in paragraphs 1 through 35.

ANSWER: Defendant adopts and incorporates its responses to paragraphs 1-35 as if set forth herein.

37.     Defendants have engaged in acts violating Illinois law including, but not limited to, passing off their counterfeit product as those of Plaintiff, causing a likelihood of confusion and/or misunderstanding as to the source of their goods, causing a likelihood of confusion and/or misunderstanding as to an affiliation, connection, or association with Plaintiff's genuine and authentic REDACTED and REDACTED branded REDACTED products, representing that their products have Plaintiff's approval when they do not, and engaging in other conduct which creates

13

a likelihood of confusion or misunderstanding among the public.

ANSWER: Denied.

38.    The foregoing Defendants' acts constitute a willful violation of the Illinois Uniform Deceptive Trade Practices Act, 815 ILCS § 510/1, *et seq*.

ANSWER: Denied.

39.    Plaintiff has no adequate remedy at law, and Defendants' conduct has caused Plaintiff to suffer damage to its reputation and goodwill. Unless enjoined by this Court, Plaintiff will suffer future irreparable harm as a direct result of Defendants' unlawful activities.

ANSWER: Denied.

**COUNT IV**

**<u>COPYRIGHT INFRINGEMENT (17 U.S.C. § 501(a))</u>**

40.    Plaintiff hereby realleges and incorporates by reference the allegations set forth in paragraphs 1 through 39.

ANSWER: Defendant adopts and incorporates its responses to paragraphs 1-39 as if set forth herein.

41.    Plaintiff's works have significant value and have been produced and created at considerable expense. Plaintiff is the owner of each original work, and all works at issue have been registered with the U.S. Copyright Office. *See,* **Exhibit 1**.

ANSWER: Defendant does not possess sufficient information to admit or deny the allegations contained in this paragraph, and on that basis they are denied.

42.    Plaintiff, at all relevant times, has been the holder of the pertinent exclusive rights infringed by Defendants, as alleged hereunder, including but not limited to the copyrighted Plaintiff's works, including derivative works.

ANSWER: Defendant denies infringing any of Plaintiff's works. Defendant does not possess sufficient information to admit or deny the remaining allegations contained in this

paragraph, and on that basis they are denied

43.     Upon information and belief, Defendants had access to the works through Plaintiff's normal business activities. After accessing Plaintiff's works, Defendants wrongfully created copies of the copyrighted Plaintiff's works without Plaintiff's consent and engaged in acts of widespread infringement through publishing and distributing the Plaintiff's works via online websites and digital markets in connection with the marketing of their counterfeit products. Indeed, every photograph and text used by Defendants is virtually identical to the original Plaintiff's works.

ANSWER: Denied.

44.     Plaintiff is informed and believes and thereon alleges that Defendants further infringed Plaintiff's copyrights by making or causing to be made derivative works from Plaintiff's works by producing and distributing reproductions without Plaintiff's permission.

ANSWER: Denied.

45.     Defendants, without the permission or consent of Plaintiff, have published online infringing derivative works of Plaintiff's works. Defendants have violated Plaintiff's exclusive rights of reproduction and distribution. Defendants' actions constitute an infringement of Plaintiff's exclusive rights protected under the Copyright Act (17 U.S.C. § 101, et seq.).

ANSWER: Denied.

46.     Further, as a direct result of the acts of copyright infringement, Defendants have obtained direct and indirect profits they would not otherwise have realized but for their infringement of the copyrighted Plaintiff's works. Plaintiff is entitled to disgorgement of Defendants' profits directly and indirectly attributable to their infringement of Plaintiff's works.

ANSWER: Denied.

47.     The foregoing acts of infringement constitute a collective enterprise of shared,

overlapping facts, and have been willful, intentional, and in disregard of and with indifference to the rights of Plaintiff.

ANSWER: Denied.

48.     As a result of Defendants' infringement of Plaintiff's exclusive rights under its copyright, Plaintiff is entitled to relief pursuant to 17 U.S.C. § 504.

ANSWER: Denied.

49.     The conduct of Defendants is causing and, unless enjoined and restrained by this Court, will continue to cause Plaintiff great and irreparable injury that cannot fully be compensated or measured in money. Plaintiff has no adequate remedy at law. Pursuant to 17 U.S.C. §§ 502 and 503, Plaintiff is entitled to injunctive relief prohibiting Defendants from further infringing Plaintiff's copyrights and ordering that Defendants destroy all unauthorized copies. Defendants' copies, digital files, and other embodiments of Plaintiff's Works from which copies can be reproduced should be impounded and forfeited to Plaintiff as instruments of infringement, and all infringing copies created by Defendants should be impounded and forfeited to Plaintiff, under 17 U.S.C. § 503.

ANSWER: Denied.

## COUNT V

## <u>CIVIL CONSPIRACY</u>

50.     Plaintiff hereby realleges and incorporates by reference the allegations set forth in paragraphs 1 through 49.

ANSWER: Defendant adopts and incorporates its responses to paragraphs 1-49 as if set forth herein.

51.     Plaintiff is informed and believes and thereon alleges that Defendants knowingly and voluntarily entered into a scheme and agreement to engage in a combination of unlawful acts

and misconduct including, without limitation, a concerted and collaborated effort to maintain the distribution, marketing, advertising, shipping, offer for sale, or sale of counterfeit products in violation of the Illinois Uniform Deceptive Trade Practices Act, 815 ILCS § 510, et seq.

ANSWER: Denied.

52.    The intent, purpose, and objective of the conspiracy and the underlying combination of unlawful acts and misconduct committed by the Defendants was to undermine Plaintiff and its business by unfairly competing against it as described above.

ANSWER: Denied.

53.    The Defendants each understood and accepted the foregoing scheme and agreed to do their respective part, to further accomplish the foregoing intent, purpose, and objective. Thus, by entering the conspiracy, each Defendant has deliberately, willfully, and maliciously permitted, encouraged, and/or induced all the foregoing unlawful acts and misconduct.

ANSWER: Denied.

54.    As a direct and proximate cause of the unlawful acts and misconduct undertaken by each Defendant in furtherance of the conspiracy, Plaintiff has sustained, and unless each Defendant is restrained and enjoined, will continue to sustain severe, immediate, and irreparable harm, damage, and injury for which Plaintiff has no adequate remedy at law.

ANSWER: Denied.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment against Defendants as follows:

A.    That Defendants, their affiliates, officers, agents, servants, employees, attorneys, confederates, and all other persons acting for, with, by, through, under, or in active concert with them be temporarily preliminary, and permanently enjoined and restrained from:

i.    Using Plaintiff's trademarks in any manner in connection with the

distribution, marketing, advertising, offering for sale, or sale of any product that is not a genuine product of Plaintiff, or is not authorized by Plaintiff to be sold in connection with Plaintiff's trademarks;

ii.     Passing off, inducing, or enabling others to sell or pass off any product as a genuine Plaintiff's product or any other product produced by Plaintiff that is not Plaintiff's or not produced under the authority, control, or supervision of Plaintiff and approved by Plaintiff for sale under Plaintiff's trademarks and associated with or derived from Plaintiff's trademarks;

iii.     Committing any acts calculated to cause consumers to believe that Defendants' counterfeit product is those sold under the authority, control, or supervision of Plaintiff, or are sponsored by, approved of, or otherwise connected with Plaintiff, including without limitation through use of Plaintiff's original photographs texts in connection with the offer or sale of counterfeit products;

iv.     Further infringing Plaintiff's trademarks and damaging Plaintiff's goodwill;

v.     Otherwise competing unfairly with Plaintiff in any manner;

vi.     Shipping (including drop-shipping), delivering, holding for sale, transferring, or otherwise moving, storing, distributing, returning, or otherwise disposing of, in any manner, products or inventory not manufactured by or for Plaintiff, nor authorized by Plaintiff to be sold or offered for sale, and which bear any Plaintiff's trademark, or any reproductions, counterfeit copies, or colorable imitations thereof;

vii.     Using, linking to, transferring, selling, exercising control over, or otherwise owning the Defendant Internet Stores, or any other domain name or online marketplace

account that is being used to sell or is how Defendants could continue to sell counterfeit product;

   viii. Operating and/or hosting websites at the Defendant Internet Stores of any other domain names registered or operated by Defendants that are involved in the distribution, marketing, advertising, offering for sale, or sale of any product bearing the Plaintiff's trademarks or reproduction, counterfeit copy, or colorable imitation thereof that is not a genuine product or not authorized by Plaintiff to be sold in connection with the Plaintiff's trademarks; and,

   ix. Registering any additional domain names that use or incorporate any portion of the Plaintiff's trademarks; and,

B. That Defendants, their affiliates, officers, agents, servants, employees, attorneys, confederates, and all persons acting for, with, by through, under, or in active concert with them be temporarily, preliminarily, and permanently enjoined and restrained from:

   i. Displaying images protected by the Plaintiff's trademarks in connection with the distribution, advertising, offer for sale and/or sale of any product that is not a genuine product of Plaintiff's or is not authorized by Plaintiff to be sold in connection with the Plaintiff's trademarks; and

   ii. Shipping, delivering, holding for same, distributing, returning, transferring, or otherwise moving, storing, or disposing of in any manner products or inventory not manufactured by or for Plaintiff, not authorized by Plaintiff to be sold or offered for sale, and protected by the Plaintiff's Trademark or any reproductions, counterfeit copies, or colorable imitation thereof; and,

C. That Defendants, within fourteen (14) days after service of judgment with notice of entry thereof upon them, be required to file with the Court and serve upon Plaintiff a written report

under oath setting forth in detail the manner and form in which Defendants have complied with paragraphs 1(a) through 1(g) above any and all injunctive relief ordered by this Court;

D.    Entry of an Order that, upon Plaintiff's request, those in privity with Defendants and those with notice of the injunction, including any online marketplaces such as: Amazon and Alibaba Group Holding Ltd., DHgate, eBay, Newegg , Shopify, Wish, Alipay.com Co., Ltd. and any related Alibaba entities (collectively "Alibaba"); social media platforms such as: Facebook, YouTube, LinkedIn, Twitter; Internet search engines such as Google, Bing, and Yahoo; webhosts for the Defendants Domain Names, and domain name registrars, that are provided with notice of the injunction, cease facilitating access to any or all webstores through which Defendants engage in the sale of counterfeit products using the Plaintiff's trademarks; shall:

    i.    Disable and cease providing services for any accounts through which Defendants engage in the sale of counterfeit Plaintiff's REDACTED and REDACTED branded product using Plaintiff's trademarks, including any accounts associated with the Defendants listed on Schedule A;

    ii.    Disable and cease displaying any advertisements used by or associated with Defendants in connection with the sale of counterfeiting and infringing counterfeit product using Plaintiff's trademarks; and,

    iii.    Take all steps necessary to prevent links to the Defendant Online Stores identified in Schedule A from displaying in search results, including, but not limited to, removing links to the Defendant Online stores from any search index; and,

E.    That Defendants account for and pay to Plaintiff all profits realized by Defendants by reason of Defendants' unlawful acts herein alleged, and that the amount of damages for infringement of Plaintiff's trademarks be increased by a sum not exceeding three times the amount thereof as provided by 15 U.S.C. § 1117;

F.      For Judgment in favor of Plaintiff against Defendants that they have: (a) willfully infringed Plaintiff's rights in its federally registered trademark pursuant to 15 U.S.C. § 1114; and (b) otherwise injured the business reputation and business of Plaintiff by Defendants' acts and conduct set forth in this Complaint;

G.      For Judgment in favor of Plaintiff against Defendants for actual damages or statutory damages pursuant to 15 U.S.C. § 1117, at the election of Plaintiffs, in an amount to be determined at trial;

H.      In the alternative, that Plaintiff be awarded statutory damages pursuant to 15 U.S.C. § 1117(c)(2) of $2,000,000 for each and every use of Plaintiff's Trademark;

I.      That Plaintiff be awarded its reasonable attorneys' fees and costs; and,

J.      That Plaintiff be awarded any and all other relief that this Court deems equitable and just.

ANSWER: Defendant denies that Plaintiff is entitled to any of the relief sought in its "Prayer for Relief," paragraphs A-J (including any sub-paragraphs). Any allegation contained in Plaintiff's Complaint above that has not been either admitted or denied, is hereby denied.

## AFFIRMATIVE DEFENSES

### First Affirmative Defense
### Misuse of Trademark

Plaintiff's claims are barred, in whole or in part, because Zulay is misusing their trademark "Zulay" in this and related litigation by pursuing, *en masse*, sellers of similar goods which are comparable to Plaintiff's products. The Zulay mark, and registration(s) thereof, is the vehicle Plaintiff is using to accomplish its violations of antitrust law, namely, eliminating its competition in the kitchen product market through bulk litigation involving e-commerce resellers lawfully selling

products similar to those sold by Plaintiff. Plaintiff's pre-suit investigation, on information and belief, involved the use of software which simply performed textual scans seeking listings for garlic presses through Amazon and other marketplaces, and wherever those words appear, that product listing was included despite the content of that listing.

On information and belief, Plaintiff performed little to no pre-suit research to determine whether its Complaint's central allegation - *i.e.*, that Defendants were infringing Zulay's trademark by selling counterfeit imitations of Zulay products - applied to Defendant. Moreoever, Counsel for Defendant has provided Zulay's counsel with proof of Defendant's non-infringing sales of garlic presses manufactured, marketed, and sold by Defendant under Defendant's own federally-registered Trademark, and yet Plaintiff has refused to withdraw its claims against Defendant. Plaintiff has misused its trademark rights be interfering directly with the business relationships of a competitor, *i.e.*, Defendant, by using this lawsuit as an anticompetitive weapon. Plaintiff cannot use trademark law to block legitimate commerce and prevent consumers from accessing genuine goods lawfully offered in e-commerce marketplaces. Plaintiff's conduct constitutes trademark misuse.

Second Affirmative Defense
Misuse of Copyright

Plaintiff's claims are barred, in whole or in part, because Zulay is misusing their copyright on a photo of a garlic press used in product listings in this and related litigation by pursuing, *en masse*, sellers of similar goods whose listings include a similar photograph of a generic garlic press. The photograph, and registration(s) thereof, is the vehicle Plaintiff is using to accomplish its violations of antitrust law, namely, eliminating its competition in the kitchen product market through bulk litigation involving e-commerce resellers lawfully selling generic garlic presses similar to those sold by Plaintiff who include a photo of said garlic press in their listing. Plaintiff's pre-suit investigation, on information and belief, involved the use of software which simply performed

textual scans seeking listings for garlic presses through Amazon and other marketplaces, and wherever those words appear, that product listing was included despite the content of that listing or the provenance of any listing photo.

On information and belief, Plaintiff performed little to no pre-suit research to determine whether its Complaint's central allegation - *i.e.*, that Defendants were infringing Zulay's copyright by using a product photograph Zulay registered with the United States Copyright Office - applied to Defendant. Moreoever, Counsel for Defendant has provided Zulay's counsel with proof of Defendant's non-infringing listing photo of the garlic press manufactured, marketed, and sold by Defendant under Defendant's own federally-registered Trademark, and yet Plaintiff has refused to withdraw its claims against Defendant. Plaintiff has misused its copyright rights be interfering directly with the business relationships of a competitor, *i.e.*, Defendant, by using this lawsuit as an anticompetitive weapon. Plaintiff cannot use copyright law to block legitimate commerce and prevent consumers from accessing genuine goods lawfully offered in e-commerce marketplaces. Plaintiff's conduct constitutes copyright misuse.

## COUNTERCLAIMS

COMES NOW Defendant Kitessensu, by and through Counsel, and for their Counterclaim against Plaintiff / Counter-Defendant Zulay LLC ("Plaintiff" or "Zulay") alleges as follows:

### Parties

1. Defendant is in the business of manufacturing, marketing, and selling kitchen products and selling them via e-commerce. They are located in the People's Republic of China.

2. Plaintiff is a company organized and located in the State of Florida.

### Jurisdiction and Venue

3. This Court has subject matter jurisdiction over these Counterclaims pursuant to the Lanham

Act, 15 U.S.C. § 1051, et seq., 28 U.S.C. § 1338(a)-(b), 28 U.S.C. §§ 1367, and 28 U.S.C. § 1331. This Court has jurisdiction over the claims in this action that arise under the laws of the State of Illinois pursuant to 28 U.S.C. §¶ 1367(aq) because the state law claims are so related to the federal claims that they form part of the same case or controversy and derive from a common nucleus of operative facts.

4. This Court may exercise jurisdiction over Plaintiff as it has already submitted itself to this Court's jurisdiction by filing its lawsuit here.

5. Venue is proper in this Court under 28 U.S.C. § 1391(b) and/or 28 U.S.C. § 1391(c) because Plaintiff is subject to this Court's personal jurisdiction.

<u>Facts</u>

6. Defendant incorporates by reference all facts and admissions they made in the foregoing Answer and Affirmative Defenses.

7. Defendant is engaged the manufacturing, marketing, and sale of kitchen products and products, including the garlic press at issue in this matter.

8. Plaintiff is also engaged in the sale of kitchen products, including the garlic press at issue in this matter, and Plaintiff competes with Defendant for customers of such products.

9. On or about June 22, 2022, Plaintiff brought this action against mostly foreign, e-commerce resellers generally engaged in the sale of kitchen products allegedly using, without authorization, Plaintiff's marks as source identifiers and/or creating a likelihood of confusion as to the source or sponsorship of the products. [ECF No. 1]

10. Plaintiff filed an ex parte motion for a temporary restraining order under seal against all of the defendants. Plaintiff made representations to the Court about Defendant which were not true and made little to no effort to determine if the representations about Defendant were true. For example, Plaintiff stated that Defendant was "offering for sale and selling counterfeit products that look similar to authentic and genuine ZULAY KITCHEN and

MILK BOSS branded kitchen products and use infringing and counterfeit marks identical to the ZULAY and MILK BOSS marks." [ECF No. 4, p. 8]

11. Based on this false representation, among others, Plaintiff obtained the requested relief of a sealed temporary restraining order, including putting an asset restraint upon Defendants' ecommerce accounts on July 14, 2022. [ECF No. 16]

12. The Defendant offered for sale on its Amazon storefront a kitchen product (a garlic press) which they manufactured, marketed, and sold under their own federally-registered trademark.

13. There is nothing in Defendant's product listing to suggest that the product was sponsored or endorsed by Zulay. In fact, Zulay does not appear anywhere on the listing, nor in any metatags, as alleged by Plaintiff. Defendant's listings clearly identify Kitessensu as the seller and as the source of the product. The photo in the product listing was taken by an employee of Kitessensu.

Count I - Abuse of Process

14. Defendant repeats and incorporates by reference herein the allegations contained in paragraphs 1-13 of this Counterclaim.

15. Defendant sells kitchen products and is one of Plaintiff's competitors. It is in Plaintiff's economic and competitive interest that Defendant is not in business.

16. Upon information and belief, Plaintiff abused the governmental processes of this Court by seeking and maintaining a temporary restraining order to freeze Defendant's assets and prosecute this case to extortionate and anti-competitive purposes.

17. Upon information and belief, Plaintiff performed little if any due diligence and pre-filing fact investigation and relied on software to conduct simple textual searches for competing sellers across the Amazon.com marketplace and simply "collect" product listings regardless of the marks used in the listing.

18. The entry of the TRO, and its conversion into a preliminary injunction on August 11, 2022 [ECF No. 25], has disrupted Defendant's business operations as the funds in Defendant's accounts are necessary for Defendant to conduct business. The longer the Preliminary Injunction remains in place, the more economic damage will be suffered by Defendant. Moreover, the single item at issue in this case is a garlic press that is but one of more than 50 items sold by Defendant. However, the preliminary injunction entered in this case has frozen all sales proceeds in Defendant's Amazon account, regardless of the product sold.

19. In obtaining a preliminary injunction in this matter, Plaintiff has succeeded in disabling its competitors, including Defendant which was selling a product it manufactured, marketed, and sold under its own federally-registered trademark.

20. Plaintiff's counterfeiting, trademark, copyright, and related claims against Defendant are objectively unreasonable.

21. Plaintiff has continued to prosecute this action against Defendant because it knows that continued defense will impose substantial costs that Defendant will have a growing inability to pay as long as their ecommerce seller account is partially disabled and the funds are frozen in their account.

22. At all relevant times, Plaintiff has maintained an ulterior purpose to its intellectual property enforcement activities; namely, pursuing competitors who are engaging in lawful commerce by, with willful blindness, quietly aggregating them with those behaving unlawfully and using the latter's counterfeiting and inexcusable acts to shut down the former with the latter.

23. The foregoing acts of Plaintiff constitute an abuse of process under Illinois law.

24. Plaintiff's actions in seeking an asset-restraining TRO, converting the TRO into a preliminary injunction, leading to issuance of legal process in an attempt to misuse or pervert

26

regular and lawful court process in a tortious and improper way.

25. Plaintiff's actions are oppressive because they lack merit and have a high cost of
defense, particularly where funds which might otherwise be used to pay those costs are
unavailable because of Plaintiff's actions.

26. Plaintiff's actions in obtaining an asset restraint and continuing to litigate this case
against Defendant has caused and continue to cause damage to Defendant.

Count II
Declaratory Judgment of Non-Infringement

27. Defendant incorporates by reference all foreging allegations made in its affirmative
defenses and counterclaims as if fully set forth herein.

28. There is an actual and justiciable controversy between the parties regarding
Defendant's alleged copyright infringement of Plaintiff's photograph, as alleged in
Plaintiff's Complaint.

29. Defendant's product listing did not contain Plaintiff's registered photograph. In fact,
Defendant used in its listing a photograph taken by an employee of Defendant.
Defendant has communicated this fact to Plaintiff, and has submitted to the Court and
to Plaintiff a declaration sworn by the owner of Defendant Kitessensu stating as
much.

30. Despite the foregoing, Plaintiff has knowingly continued to prosecute this matter,
obtained a temporary restraining order and a preliminary injunction freezing in its
entirety Defendant's Amazon account, causing Defendant to have no access to its
sales proceeds with which to pay employees and suppliers.

31. Defendant's counsel attempted to negotiate an agreed asset freeze with counsel for
Plaintiff, but Plaintiff refused to compromise on the unlimited asset freeze created by
the entry of the temporary restraining order and the preliminary injunction, despite

27

having been provided evidence that the photograph listed in Defendant's product listing on Amazon was not, in fact, Plaintiff's photograph, but rather was one taken by an employee of Defendant.

32. Defendant did not infringe on Plaintiff's trademarks, nor did Defendant infringe on Plaintiff's copyright.

**WHEREFORE**, Defendant / Counter-Plaintiff prays that this Court enter judgment in favor of Defendant Kitessensu and against Plaintiff, providing as follows::

A. Plaintiff take nothing from its Complaint and its claims against Defendant Kitessensu be dismissed with prejudice;

B. Declaring that Defendant Kitessensu is not liable for infringing Plaintiff's copyright;

C. That Plaintiff has misused its copyright and trademark and they should be unenforceable;

D. Awarding Defendant its costs and reasonable attorney's fees pursuant to §505 of the Copyright Act;

E. Awarding Defendant all economic damages resulting from Plaintiff's actions complained of herein; and

F. Any other relief this Court deems just and proper.

Under Federal Rule of Civil Procedure 38 and any other applicable Rule or law, Defendant demands a trial by jury as to any issue so triable.


Dated: September 12, 2022

Respectfully submitted,

/s/ Erin K. Russell
The Russell Firm, LLC
833 W. Chicago Avenue, Suite 508
Chicago, IL 60642
T: 312-994-2424
F: 312-706-9766
erin@russellfirmip.com

<u>CERTIFICATE OF SERVICE</u>

 This is to certify that on September 12, 2022 this document was filed with the Court via the CM/ECF electronic filing system, thereby serving it upon all counsel of record.

       <u>/s/ Erin K. Russell</u>